United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAMGAMO BIOSCIENCES, INC.

Plaintiff,

v.

CARGOLUX AIRLINES INTERNATIONAL, S.A.; RGP INTERNATIONAL FREIGHTS LTD.; AEROGROUND, INC.; AEROGROUND TRANSPORTATION SERVICES, INC.; MISTER CARGO LTD.; INTERSPED LOGISTICS GROUP, INC.; BECKMAN COULTER UNITED KINGDOM, LTD.; and Does 1-20;

Defendants.
_______________________________________/

No. C-04-0672 JSW (EMC)

**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (Docket No. 70)**

Plaintiff Samgamo Biosciences, Inc., moves for default judgment as to Defendants Intersped Logistics Group ("Intersped"), RGP International Freights Ltd. ("RGP"), and Mister Cargo, Ltd. ("Mr. Cargo"), on its common carrier, negligence, and breach of contract causes of action. Having reviewed the service of process, the complaint, and the proof of damages, this court hereby recommends that Plaintiff's motion for default judgment be GRANTED.

## I. FACTUAL BACKGROUND

On January 12, 2004, Samgamo Biosciences filed suit in California Superior Court to recover damages incurred in the international shipping of a Robot/Thermal Cycler ("Cargo"). The defendants were 15 "Carrier Defendants" (five named and 10 unknown defendants under fictitious names), and 11 "Shipper Defendants" (Beckman Coulter United Kingdom ("Beckman") and 10 under fictitious names, identities unknown by the Plaintiffs). Compl. ¶¶ 2-10.

The Plaintiffs claim that they have incurred damages in the amount of $216,594 (the price of the Cargo) based on the facts alleged in the complaint: On April 11, 2002, Beckman agreed to sell the Cargo to Samgamo, purported to be in good order and condition. Compl. ¶ 12. Beckman decommissioned and repackaged the Cargo for shipment from its facility in the United Kingdom to Samgamo's facility in Richmond, California. Compl. ¶ 12. On or about October 3, 2002, the Carrier Defendants accepted the Cargo for shipment to be carried overland and by air from London, England to Richmond, California. Compl. ¶ 13. The Cargo was delivered in a damaged and unsalvageable condition on October 9, 2002. Compl. ¶ 14; Cammarano Decl. in Support of Pls.' Req. to Enter Default Judgments, Ex. 6, p. 3. The Plaintiffs alleged six causes of action: (1) Damage to Cargo, (2) Negligence/ Gross Negligence/ Wilful Misconduct, (3) Breach of Contract, (4) Breach of Warranty, (5) Breach of Bailment, and (6) Breach of Contract for Sale of Goods.

On February 18, 2004, Defendant Cargolux Airlines removed the case to federal court, claiming that the case arose under "The Convention for the Unification of Certain Rules Relating to International Carriage by Air, Signed at Warsaw on 12 October 1929 (49 U.S.C. 40105) ("The Warsaw Convention").

Defaults were entered against three of the named Defendants who had not responded to the complaint: Intersped Logistics Group ("Intersped"), RGP International Freights Ltd. ("RGP"), and Mister Cargo, Ltd. ("Mr. Cargo"). On June 14, 2005, Samgamo moved for entry of default judgments against these three Defendants. The other Defendants have been dismissed.

On August 9, 2005, Judge White referred the motion for default judgment to this Court for a report and recommendation.

During the pendency of this case, Plaintiffs provided supplemental evidence which clarified or amplified the facts: Beckman had actually sold the Cargo to Gendaq, Samgamo's United Kingdom affiliate, in 2000. Beckman was then hired in 2002 to decommission the Cargo for transport from Gendaq, in England, to Samgamo, in the United States. *See* Pls.' Supplemental Briefing at 2. Defendant Mr. Cargo issued a "door to door" master air waybill for the Cargo, to be delivered from "Beckman" in London to "Gendaq," in Point Richmond, California. *See* Pls.' Second Supplemental Briefing, Ex. 15. RGP was hired to package the Cargo and transport it to the

air carrier; Beckman assisted in disassembling the Cargo at Gendaq's facility in September 2002. *See* Pls.' Supplemental Briefing, Ex. 14, Ex. 8, Item 3. RGP took the Cargo for the purpose of re-crating for transport to the United States. *See id.* The Cargo was in good order upon delivery to RGP in Manchester, England. *See* Daley Decl. in Supp. of Pls.' Supplemental Briefing, Ex. 14 ¶ ¶ 5-6; Pls. Third Supplemental Briefing, Ex. 1. Mr. Cargo hired Cargolux Airlines to transport the Cargo by air to San Francisco International Airport ("SFO"). *See id*; Pls.' Second Supplemental Briefing, Ex. 15. RGP is identified as the shipper on Cargolux's air waybill. *See* Pls.' Second Supplemental Briefing, Ex. 16. Cargolux transported the Cargo to SFO, where it was delivered to the Aeroground Cargo Terminal.[1] *See* Pls.' Third Supplemental Briefing, Ex. 2. The Cargo was then delivered by Intersped by ground from the Aeroground Cargo Terminal, which is 3 miles outside of SFO, to Plaintiffs in Richmond, California. *See id.* The delivery slip signed by the Intersped representative who took delivery of the Cargo at the Cargolux terminal did not note any damage to the Cargo. *See* Dhurjon-Singh Decl. Ex. 4. The damage was discovered after delivery to Samgamo.

The real party in interest in this action is Federal Insurance Company ("FIC"), the subrogated underwriter of Samgamo. FIC paid $216,574.00 to Samgamo for the damage to the Cargo on June 9, 2003. *See* Dhurjon-Singh Decl. in Supp. of Pls.' Req. to Enter Default Judgments ¶¶ 2,11; Cammarano Decl. in Support of Pls.' Req. to Enter Default Judgments, Ex. 7; Pls' Third Supplemental Briefing, Cammarano Decl., ¶ 12. The monetary damages of $216,574.00 reflects the value of the damaged Cargo, which was not in salvagable condition, and considered a total loss. On November 4, 2002, Beckman Coulter quoted the replacement value of the Cargo as being $235,933.00. *See* Pls.' Supplemental Briefing, Ex. 8, Item 16. A Cargo surveyor hired by FIC[2] agreed that (1) since the Cargo was very shock and moisture sensitive and could have sustained concealed damages and (2) due to the high cost of labor for dismantling and testing the Cargo, the

---

[1] The Aeroground cargo terminal is a contract cargo terminal for Cargolux Airlines. *See* Pls.' Third Supplemental Briefing, Ex. 2.

[2] The Cargo Surveyer was hired by Chubb Group of Insurance Companies. FIC is one of the Chubb Group of Insurance Companies. *See* Dhurjon-Singh Decl. in Supp. of Pls.' Req. to Enter Default Judgments ¶ 2.

Cargo was considered a constructive and total loss, and no parts of the Cargo were salvageable.[3] *See* Dhurjon-Singh Decl. in Supp. of Pls.' Req. to Enter Default Judgments, Ex. 5. Plaintiffs have received $29,000 from settling Defendants, and therefore $187,574.00 represents the remaining value of the damages due Plaintiffs from the three defaulting Defendants herein.

## II. DISCUSSION

### A. Service of Process

This Court finds that Plaintiff Samgamo has provided evidence of effective proof of service on each of the defaulting Defendants. An authorized agent for service of process at Interspeed was personally served. *See* Proof of Service Re Summons and Complaint on Defendant Interspeed Logistics Group, Inc. Mr. Cargo was served on February 18, 2005 in accordance with the Hague Convention. *See* Proof of Service of Summons and Complaint on Defendant Mister Cargo, Ltd., Ex. B (solicitor and office of Supreme Court of England of Wales left the documents at Mister Cargo Ltd.'s registered office and served the documents by special delivery on Mister Cargo's place of business; these methods of delivery conform with British law. *See* Wallace Affidavit ¶¶ 1-3.). RGP was also served in accordance with the Hague Convention on March 15, 2005. *See* Proof of Service of Summons and Complaint on Defendant RGP International Freight Limited, Ex. B (authorized server served RGP by serving documents to RGP's registered office, consistent with British law).

### B. Choice of Law

This case was removed to federal court based on Defendant Cargolux's assertion that the case arose under the Warsaw Convention. *See* Notice of Removal of Action Under 28 U.S.C. Section 1441 (b). The Warsaw Convention applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." 49 U.S.C. § 40105, Art. 1(1). The removal was not opposed. The Warsaw Convention thus applies in the first instance to the shipment at issue in this case.

---

[3] The cargo surveyor additionally concluded that since the Cargo was the product of the high tech industry, it could already be outdated six to eight months after date of manufacture and therefore would not be economical to repair, contributing to the conclusion that none of the Cargo was salvageable. *See* Pls.' Supplemental Briefing, Ex. 11.

United States District Court
For the Northern District of California

If a contract for transportation by air includes transportation by land outside of the airport, damage is presumed to have taken place during transportation by air, subject to proof to the contrary. *See* 49 U.S.C. § 40105, Art. 18(1-3). However, the Warsaw Convention does not apply to any damage occurring outside an airport, *e.g.*, during ground transportation. *See Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705, 707 (2d Cir. 1990).

While the Warsaw Convention clearly applies to Mr. Cargo, Plaintiffs have provided evidence that RGP's and Intersped's actions contributing to the damage of the Cargo took place outside of the airport and not in the course of air transportation.[4] The Intersped representative took delivery of the goods without exception to the condition of the Cargo. This is *prima facie* evidence that the Cargo was in good order when received by Intersped at the Cargolux terminal outside San Francisco International Airport. *Louisiana Southern Ry. Co. v. Anderson, Clayton, and Co.*, 191 F.2d 784, 786 (5th Cir. 1951). Since the Cargo was damaged upon receipt by Samgamo, it may be inferred that the damages occurred while Intersped transported it by land to Samgamo after it left the airport.

Accordingly, the Warsaw Convention does not apply. Rather, Plaintiff's common carrier claims against Intersped arise under federal common law. *See Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999) (holding that in the absence of the Warsaw Convention, federal common law governed actions arising from loss or damage to cargo shipped by an air carrier).

Likewise, RPG's alleged failure to properly pack the Cargo occurred on land in Manchester prior to shipment by air from London. The Warsaw Convention does not apply to Plaintiff's claims against RPG.[5]

As noted above, the claims against Mr. Cargo, as the issuer of the door to door air waybill, which covered air transportation from England to the United States, is covered by the Warsaw

---

[4] As noted above, RGP was hired to package the Cargo and did so at their facility which was not on airport grounds, and Intersped was hired to pick up the Cargo from a terminal outside the airport and deliver the Cargo to the Plaintiffs in Richmond, California.

[5] As the claims against Intersped and RGP arise under federal common law and have merit, there is no need to address the alternative state law causes of action.

United States District Court
For the Northern District of California

Convention. *See* 49 U.S.C. § 40105, Art. 18(1-3). The Warsaw Convention provides the exclusive remedy for claims which its provisions govern, so all state-law claims against Mr. Cargo are pre-empted. *See* 49 U.S.C. § 40105, Art. 24.

C. Legal Standard

The disposition of a motion for default judgment lies within the discretion of the court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors to guide the Court's discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

After examining the factors, the Court finds that default judgment should be granted against RGP, Intersped, and Mr. Cargo. Because the Warsaw Convention and federal common law dealing with common carriers provide for strict liability, and Samgamo has plead that the damage to the Cargo occurred during transport and as a result of deficient packing, Samgamo has stated a valid, *prima facie* claim under either the federal common law of common carriers or the Warsaw Convention. 49 U.S.C. § 40105, Art. 18(1) (Providing that "the carrier shall be liable for damage sustained . . . if the occurrence which caused the damage so sustained took place during the transportation by air"); *Bailey v. Morgan Drive-Away, Inc.*, 647 F. Supp. 648, 653 (D. Kan. 1986) (noting strong policy of imposing strict liability on common carriers at common law); *Lousiana Southern Ry.*, 191 F.2d at 785 (noting that at common law the common carrier is held to "strict accountability"). Therefore, the second and third *Eitel* factors weigh in favor of default judgment.

The other *Eitel* factors also support entry of default judgment. For example, Samgamo will be prejudice if default judgment is not granted, since it will be without remedy. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). As to a dispute concerning material facts, Rule 8 of the Federal Rules of Civil Procedure provides that

allegations in a pleading to which a responsive pleading is required, other than allegations as to the amount of damages, are admitted when they are not denied in a responsive pleading. Fed. R. Civ. Pro. 8(d). *See also TeleVideo Systems, Inc. v. Heidenthal,* 826 F.2d 915, 917-918 (9th Cir. 1987). Because none of the defaulting Defendants has filed an answer to the complaint, there is nothing to suggest that there is a possibility of dispute concerning material facts. The fact and magnitude of damage to the Cargo does not appear to be in dispute. There is no evidence suggesting that the failure to respond to the complaint was the result of excusable neglect. The defaulting Defendants were properly served and had notice. The Court acknowledges that "[c]ases should be decided on the merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, and that damages sought are not insubstantial. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). However, the damages incurred here are not disproportionate. Plaintiff seeks only direct damages, not consequential or exemplary damages. On balance, the Court concludes that the *Eitel* factors weigh in favor of awarding default judgment.

D. No Limitation of Liability

Article 22(2) of the Warsaw Convention provides for a limitation of liability in the event that air cargo is damaged in transportation covered by the convention. 49 U.S.C. § 40105, Art. 22(2). However, even as to Mr. Cargo, the only defaulting Defendant covered by the Warsaw Convention, this limitation of liability does not apply. The Warsaw Convention dictates that all of the provisions listed in Article 8 must be included on the face of the air waybill in order for a defendant to be able to avail itself of the limitation of liability. 49 U.S.C. § 40105, Art. 9. *See also Maritime Ins. Co. v. Emery Air Freight Corp.*, 983 F.2d 437, 441 (2d. Cir. 1993) (holding that, under Article 9, the carrier is not permitted to limit its liability if [the] particulars listed in Article 8 are absent). The face of the air waybill in this case did not include Particular (q) of Article 8, "a statement that the transportation is subject to the rules relating to liability established by [the Warsaw Convention]."

United States District Court
For the Northern District of California

Thus, Mr. Cargo cannot avail itself of the damage limitation provisions of the convention. *See* Daley Decl. in Supp. of Pls.' Second Supplemental Briefing, Exs. 15, 16.[6]

E. Joint and Several Liability

Under both the Warsaw Convention and federal common law, joint and several liability applies to the defaulting Defendants. The Warsaw Convention provides that successive carriers shall be jointly and severally liable for the loss or damage to goods under their care.[7] 49 U.S.C. § 40105, Art. 30(3). Under federal common law, "where a fair allocation of liability cannot be made among multiple tortfeasors, the federal common law permits imposition of joint and several liability." *Project Hope v. M/V IBN Sina*, 250 F.3d 67, 76 (2d Cir. 2001), (quoting Restatement (Second) of Torts § 879 (1979)).

F. Damages

"The general rule of law is that upon default the factual allegations of the complaint *except those relating to the amount of damages*, will be taken as true." *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (emphasis added). Samgamo carries the burden of proving damages resulting from the damage to the Cargo. *See Bd. of Trustees of the Boilermaker Vacation*

---

[6] The Court notes that Mr. Cargo's air waybill contains the following language along the bottom of the air waybill: "All business is transacted in accordance with the standard trading conditions (2000 Edition) of the British International Freight Association, copies of which are available on request." *See id.* at Ex. 16. The British International Freight Association's (BIFA) conditions contain a section on "Liability and Limitation." *See* British International Freight Association, Standard Trading Conditions 2005 (Dec. 2004), *available at* http://www.bifa.org/DocFrame/DocView.asp?id=235&sec=-1) (last visited Dec. 13, 2005). But these limitations are not expressly provided in the waybill. The provisions of BIFA are not cited or quoted in the air waybill; those provisions are steps removed from the air waybill. The Court has serious doubts about the effectiveness of any effort to incorporate the BIFA's standard trading conditions into the air waybill. *See e.g. Pray v. Oughtred & Harrison* 1999 U.S. Dist. LEXIS 5287 (S.D.N.Y. 1999) (holding that the BIFA standard trading conditions were not incorporated by reference into the contract, because the term "All business undertaken according to the standard terms and trading conditions of the ICS BIFA" appeared at the bottom of a facsimile written in minuscule print, and was blurred and wholly illegible). In any event, no party has raised the application of BIFA.

[7] While Article 30(3) provides that the consignor has a right of action against the first carrier and the consignee has a right of action against the last carrier, Article 1(3) provides that "transportation to be performed by several successive air carriers shall be deemed, for the purposes of this convention, to be one undivided transportation, if it has been regarded by the parties as a single operation." 49 U.S.C. § 40105, Art. 1(3) In the case of one undivided transportation, any possible restrictions on who may sue do not apply. *See Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 459 (2d Cir. 2003).

*Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 43346, *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit").

As discussed above, Plaintiffs have proven that the $216,574.00 paid by Federal Insurance Company reflects the true extent of the damages suffered by the Plaintiffs in this case and thus that $187,574 reflects the true value of their damages after a $29,000 offset for money received from the settling defendants. *See* Pls.' Supplemental Briefing, Ex. 8; Cammarano Decl. in Supp. of Pls.' Third Supplemental Briefing ¶ 11.[8]

G. Prejudgment Interest

A decision to award prejudgment interest on successful federal claims is subject to the court's discretion. The court examines such issues as whether the prejudgment interest is compensatory or duplicative and whether the equities in the particular case would preclude award of prejudgment interest. *See F.D.I.C. v. UMIC, Inc.*, 136 F.3d 1375, 1388 (10th Cir. 1998). This Court finds that an award of prejudgment interest in this case would be compensatory rather than duplicative and that there are no equities particular to this case that would preclude an award of prejudgment interest.

Plaintiffs claim that prejudgment interest has accumulated at the rate of .095 or $48.82 per day, from June 9, 2003, the date that FIC paid Samgamo for the damages. Pls.' Req. to Enter Default Judgments at p. 2. Plaintiffs cite no authority for its calculation. Because this Court's jurisdiction is based on federal question, federal law governing the calculation of prejudgment interest rates applies. *See The Guides, Ltd. v. The Yarmouth Group Property Management, Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002) (noting that "a federal rate of interest rather than the state rate applies where jurisdiction is based on a federal question.") Federal pre- and postjudgment interest rates are calculated at a rate equal to the yield equivalent of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date at which the interest rates started accruing. *See Western Pacific Fisheries, Inc. v. S.S. President Grant*,

---

[8] The Court notes that Beckman originally sold the Cargo to Samgamo's affiliate in 2000 for 140,000 Pounds Sterling, equivalent to $216,574 U.S. Dollars in October 2002 when Samgamo took delivery of the Cargo. *See* Pls' Supplemental Briefing, Exh. 8, Items 1, 2.

United States District Court
For the Northern District of California

730 F.2d 1280, 1289 (9th Cir. 1984) (citing 28 U.S.C. § 1961(a)). The date closest to June 9, 2003 for which this rate is available is June 6, 2003, when the one-year Treasury Bill rate was 1.13% annually. *See Overseas Markets: Money Rates Administered*, The Globe and Mail, June 6, 2003 at B13, available in 2003 WLNR 14080996. Calculated at this rate, prejudgment interest on the judgment amount of $187,574.00 has accrued at a rate of $5.81 per day. As of the date of this Report and Recommendation, December 21, 2005, the total judgment including interest comes to $192,954.06.

## III. CONCLUSION

For the foregoing reasons, the Court recommends granting Plaintiff's motion for default judgment against each of the three defaulting Defendants and that Samgamo be awarded damages in the amount of $192,954.06 as of December 21, 2005 plus interest at a rate of $5.81 per day thereafter. Defendants should be held jointly and severally liable.

Dated: December 21, 2005

EDWARD M. CHEN
United States Magistrate Judge